UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:03-CR-124-JMH-1 |
| | ) | No. 5:08-CV-7012-JMH |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| TIMOTHY KELLOGG, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On February 26, 2008,[1] Defendant/Movant Timothy Kellogg moved pro se for relief under 28 U.S.C. § 2255. *See* DE #146 (Motion to Vacate). The United States responded in opposition on July 1, 2008, *see* DE #155 (Response), and on September 2, 2008,[2] Kellogg filed a pro se reply. *See* DE #158 (Reply).

A little over nine months later, Hon. Marcia G. Shein moved for admission pro hac vice to represent Defendant/Movant, *see* DE #161 (Motion for Admission), and District Judge Hood granted the motion. *See* DE #163 (Order). On August 27, 2009, Kellogg moved, by counsel, to supplement his section 2255 motion, *see* DE #165 (Motion to Supplement), and the Court granted that motion, ordering the tendered supplement to be filed into the record. *See* DE #170 (Order); DE #172 (Supplement). The supplement purports to clarify and summarize the three

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam).

[2] This filing date likewise reflects the prison mailbox rule. *See Richard*, 290 F.3d at 812-13.

issues raised in Kellogg's section 2255 motion.[3] *See* DE #172.

Having considered the full record, and for the reasons articulated herein, the Court

**RECOMMENDS** that the District Judge **DENY** section 2255 relief as to all grounds.

Additionally, the District Court should not grant a Certificate of Appealability.

## I. BACKGROUND

On October 2, 2003, a Grand Jury indicted Kellogg on one count of conspiracy to possess

visual depictions of children engaged in sexually explicit conduct (18 U.S.C. § 2252(b)(1)); 39

counts of receiving or distributing visual depictions of children engaged in sexually explicit

conduct (18 U.S.C. § 2252(a)(2)); one count of possession of visual depictions of children

engaged in sexually explicit conduct (18 U.S.C. § 2252(a)(4)(B)); and one criminal forfeiture

count (18 U.S.C. § 2253). *See* DE #49 (Third Superseding Indictment); DE #1 (Indictment).

Much of the Government's evidence resulted from a search and seizure conducted in a

barn on a farm owned by James White.[4] According to Kellogg, he was a guest on that farm, had

permission to store containers in the barn, and had an expectation of privacy in those containers,

as well as the various contents. *See, e.g.*, DE #107-2 (Affidavit). Based on these and other related

---

[3] The Court notes that the three summary issues advanced by Kellogg's counsel do not constitute the sum total of issues named by Defendant/Movant in his original memorandum, *see* DE #146 at 13-19, as referenced by his original section 2255 motion. *See* DE #146 at 4, 5, 7, 8. Counsel represents that the supplement "is designed to help this Honorable Court focus on the issues believed to be the most important and to assist the Petitioner in organizing the information from his pro se petition that will clarify his concerns." *See* DE #172 at 2. However, at no time has Kellogg withdrawn the other issues stated in his original section 2255 motion. Accordingly, the Court addresses all issues.

[4] The Court emphasizes this barn search because the issues raised by Kellogg all relate specifically to this search in Woodford County. Defendant/Movant makes no section 2255 complaint relating to searches in Ohio or at a storage facility in Lexington, Kentucky, but had raised issues regarding the storage facility in parts of the various suppression motions.

contentions, Defendant/Movant moved three times, by two different counsel, to suppress the

fruits of the search. *See* DE #38 (Motion to Suppress Evidence);[5] DE #67 (Motion to Suppress

Evidence);[6] DE #107 (Motion to Suppress).[7] However, each time, the District Court denied the

motion. *See* DE #46 (Minute Entry for Motion Hearing); DE #86 (Minute Entry for Motion

Hearing); DE #110 (Order). The first two times, District Judge Hood held evidentiary hearings,

*see* DE #46; DE #86, but on the third motion to suppress, he made a determination without a

hearing. *See* DE #110.

Notably to Kellogg's section 2255 contentions, White never testified at a suppression

hearing. Defendant/Movant's first counsel, Hon. Stephen Milner, attempted to subpoena White

three times. *See* DE #47 (Ex Parte Motion for Subpoenas); DE #48 (Order issuing); DE #53

(Order reissuing); DE #56 (Ex Parte Motion for Subpoena); DE #58 (Order issuing); DE #66 (Ex

Parte Motion for Subpoenas); DE #68 (Order issuing); DE #73 (Order reissuing). However,

counsel learned, at the outset of the second suppression hearing, that the final subpoena had not

been successfully served. *See* DE #102 (Second Suppression Hearing Transcript) ("Second Tr.")

at 3-4, 25-26. At the conclusion of that hearing, Milner moved the District Court to attempt to

---

[5] As to the barn search, this motion argued that officers conducting the search in
Woodford County had no jurisdiction to search outside of the Lexington-Fayette County area.
*See* DE #38 at 1. The motion further asserted that the containers searched were opaque, not clear,
and were securely fastened such that plain view could not apply. *See id.* at 1-2. Finally, the
motion argued that Kellogg had a legitimate expectation of privacy to store the items as found.
*See id.* at 2.

[6] Regarding the barn search, this motion asserted that the police acted without a warrant
and outside their jurisdiction. *See* DE #67 at 2. Additionally, the motion argued that White could
not consent to any accessing of Kellogg's hard-drive contents. *See id.* at 3.

[7] As to the Woodford County barn, this motion asserted that White's consent should be
determined to be invalid due to fear and intimidation. *See* DE #107 at 3. Next, the motion argued
that White acted as an agent of the police. *See id.* at 4.

serve a trial subpoena on White, and Judge Hood granted that motion, ordering the United States Deputy Marshals "to do everything they can to get Mr. White here." *See id.* at 58-59. Within a month, Kellogg wrote to the District Court to complain about Milner's representation and request new counsel. *See* DE #94 (Sealed Motion). The Court promptly set a hearing and ultimately granted the motion, appointing Hon. Patrick Nash to represent Kellogg moving forward in the case. *See* DE #95 (Minute Entry for Motion Hearing).

For the third suppression motion, the District Court had no additional material from White to support Kellogg's position. *See* DE #107. However, the United States provided a declaration under penalty of perjury from Detective Ann Gutierrez, who spoke with White on the telephone and provided a transcript of the majority of that recorded conversation.[8] *See* DE #109-2 (Declaration & Transcript). In the transcript, White stated "Like I said, things that were being stored there, he did not have my permission to put there . . . I allowed him to go out to my farm and work on his vehicle. He came out there, and like I said, I had no idea what was going on behind the scenes." *See id.* at 3-4. Additionally, White reported that he had relocated to Huntsville, Alabama, for a new job. *See id.* at 7.

Several days after Judge Hood denied the third motion to suppress evidence, Kellogg entered a conditional guilty plea in the case, which the District Court accepted. *See* DE #111

---

[8] Judge Griffin of the Sixth Circuit, in dissent, characterized this declaration to be an "unsworn written statement," *see United States v. Kellogg*, 202 F. App'x 96, 105 (6th Cir. 2006) (Griffin, J., dissenting), and Kellogg likewise contends the declaration to be "unsworn" here. *See* DE #172 at 8. However, the Court notes that, under 28 U.S.C. § 1746, documents signed under penalty of perjury may have like force and effect. The opening paragraph of Detective Gutierrez's declaration includes, in relevant part, "I declare under the penalty of perjury that the statements set forth below are true and correct to the best of my knowledge." *See* DE #109-2 at 1. Relatedly, Detective Gutierrez concludes the declaration as follows: "I have reviewed the above information which is true and correct to the best of my knowledge." *See id.* at 2.

(Minute Entry for Rearraignment). Defendant/Movant pled guilty to Counts 1-42 of the Third Superseding Indictment in the case and agreed to forfeit the items listed in Count 44. *See* DE #115 (Plea Agreement) at ¶ 2. Kellogg reserved, in relevant part, "the right to have an appellate court review an adverse determination of his motion to suppress . . . ."[9] *See id.* at ¶ 9. At the rearraignment, Defendant/Movant responded "Yes, Your Honor" when Judge Hood asked him if had been "fully satisfied with the advice, counsel and representation [Nash has] given you in this matter." *See* DE #131 at 4 lns. 12-15. The District Court also affirmed Kellogg's understanding that, by pleading guilty, he would be giving up trial rights, such as the right to a trial by jury, the right to confront and cross-examine adverse witnesses, and the right to compel witnesses to attend and testify. *See id.* at 11 lns. 1-25; *id.* at 12 lns. 1-15. On September 20, 2005, Judge Hood sentenced Defendant/Movant to 120 months of imprisonment on each of Counts 1-40 and 42, plus 60 months on Count 41, all to be served concurrently. *See* DE #124 (Judgment) at 2. Additionally, the District Court sentenced Kellogg to supervised release for life. *See id.* at 3. Defendant/Movant received a monetary penalty of $4200.00. *See id.* at 5.

Within two days, Kellogg appealed to the United States Court of Appeals for the Sixth Circuit. *See* DE #125 (Notice of Appeal). Defendant/Movant raised issues regarding "the admissibility of evidence uncovered at [White's] farm, a statement he made after his arrest[,] and

---

[9] This language failed to specify which "adverse ruling," despite using that term in the singular. The Court thus cannot determine, from the language alone, which of the three adverse rulings on suppression motions the parties meant to reference here. Additionally, neither Kellogg nor the United States submitted any parol evidence as to the meaning. Judge Hood's discussion of the term at rearraignment does not specify which motion to suppress: "It means – for the purpose of the record, it means that if – well, on appellate review, it is decided that I erred in making some of these decisions that I have pretrial on the motion to suppress and motions to dismiss, then you – your plea agreement will be set aside . . . ." *See* DE #131 at 7 ln.25; *id.* at 8 lns.1-4.

evidence seized from a storage locked in Lexington, Kentucky." *See* DE #140 (Opinion Affirming) at 1. In affirming the District Court's holding regarding consent to store the materials in the barn, by a 2-1 majority, the Sixth Circuit noted that "Kellogg offers no reasoned explanation why the district court committed clear error in crediting the one piece of evidence (White's statements) over the other (his own)." *See* DE #140 at 8. The appeals court further determined that Judge Hood correctly found any invitation by White to Kellogg not to have been a general invitation to use the barn at will. *See id.* at 8-9. The Sixth Circuit upheld the process utilized by the District Court, observing that "[t]he district court gave Kellogg several opportunities to present evidence, and the only evidence Kellogg presented was his own testimony." *See id.* at 9-10. The appeals court found, "[i]in the end, Kellogg never gave the district court any evidentiary reason (other than his own testimony) not to believe White's statements." *See id.* Finally, the Sixth Circuit determined that the District Court properly relied on hearsay evidence of statements by White, as transcribed by Detective Gutierrez and reported as accurate under penalty of perjury by her. *See id.* at 10-11.

Judge Griffin dissented, asserting that the District Court clearly erred in its ruling on Kellogg's third motion to suppress. *See id.* at 15. She found the statements from White, as reported by Detective Gutierrez, to be much less reliable and thus much less persuasive. *See id.* at 16-17. Additionally, Judge Griffin read White's comments in the transcript to be ambiguous at times, in contrast to Judge Hood's reading of same. *See id.* at 17-19. Further, the dissenting judge questioned the circumstances surrounding White's failure to respond to subpoenas. *See id.* at 21-22. Judge Griffin would have remanded the matter for further proceedings. *See id.* at 23.

Kellogg sought a petition for writ of certiorari from the United States Supreme Court. *See*

DE #142 (Letter). However, the highest court denied the petition. *See* DE #143 (Letter).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a section 2255 motion alleging constitutional error, the Movant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson,* 113 S. Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, the Movant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson,* 165 F.3d at 488 (citing *Hill v. United States,* 82 S. Ct. 468, 471 (1962)). In making a section 2255 motion, Movant bears the burden of proving his or her contentions by a preponderance of the evidence. *See McQueen v. United States*, 58 Fed. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

The Court shall hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact .'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court additionally recognizes the pro se status that Kellogg maintained through part of this action. Pro se motions receive a comparatively lenient construction by the Court. *See Castro v. United* States, 124 S. Ct. 786, 791-92 (2003) (demonstrating consideration given across the circuits for pro se petitions); *Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation . . . 'to encompass any allegation stating federal relief'").

## III. ANALYSIS

Reading Kellogg's section 2255 motion leniently, with respect to his pro se status at the time of filing, Defendant/Movant raises a total of twenty seven grounds (alone or as sub-arguments) for relief, to be identified as follows:

- Ground One: Attorney Milner performed ineffectively by failing to interview White, White's wife, White's children, or his own daughter to establish friend/overnight guest status. *See* DE #146 at 13.

- Ground Two: Attorney Milner performed ineffectively by failing to request a continuance at the second suppression hearing. *See id.*

- Ground Three: Attorney Milner performed ineffectively by waiving compulsory process. *See id.*

- Ground Four: Attorney Milner performed ineffectively by failing to ask Kellogg critical questions on direct examination, specifically questions about overnight guest status at the White farm. *See id.* at 13-14.

- Ground Five: Attorney Milner performed ineffectively by failing to subject the Government's motions to meaningful adversarial testing. *See id.* at 13.

- Ground Six: Attorney Milner performed ineffectively by failing to acquire

exculpatory evidence from the Government.[10] *See* DE #172 at 1.

- Ground Seven: Attorney Milner performed ineffectively by failing to discuss with and transmit exculpatory evidence to Attorney Nash. *See id.* at 1, 6.

- Ground Eight: Attorney Milner performed ineffectively by failing to advise Kellogg that a guilty plea would foreclose obtaining evidence not in the record. *See* DE #146 at 19.

- Ground Nine: Attorney Milner performed ineffectively by failing to advise Kellogg that a guilty plea would foreclose any opportunity to cross-examine White. *See id.*

- Ground Ten: Attorney Nash performed ineffectively by failing to move for an ineffective assistance of counsel ruling against Attorney Milner. *See id.* at 15.

- Ground Eleven: Attorney Nash performed ineffectively by failing to review the full case record to determine that exculpatory evidence existed and should be acquired. *See id.* at 15-16.

- Ground Twelve: Attorney Nash performed ineffectively by failing to obtain exculpatory evidence from the Government. *See id.*

---

[10] Grounds Six and Seven do not appear to have been raised in Kellogg's original section 2255 filing. *See* DE #146. On August 27, 2009, Defendant/Movant's counsel first moved to supplement the section 2255 motion, with supplement tendered. *See* DE #165. This motion to supplement thus came over fifteen months after Kellogg's original section 2255 motion and, by the Court's calculation, over two years beyond the AEDPA statute of limitations. Any new ground would be subject to that statute of limitations, and accordingly, the Court finds Grounds Six and Seven to be facially time-barred. At the same time, the Court notes that the United States filed no response at all to defense counsel's motion for leave to file the supplement, nor did Magistrate Judge Todd perform any timeliness analysis when granting the motion to supplement. *See* DE #170 (Order). Absent an explicit waiver of the statute of limitations by the United States – a waiver that does not exist here – the Court could raise the issue of timeliness *sua sponte*, order Kellogg to show cause for the timeliness problem, and permit him to submit any evidence either contradicting this Court's timeliness calculations or supporting equitable tolling. *See Day v. McDonough*, 126 S. Ct. 1675, 1684 (2006). Here, in its discretion, the Court chooses to address the two grounds on the merits. Kellogg's section 2255 motion has been pending since September 8, 2008 – more than two years – and a show-cause order at this point would only elongate the proceedings further. Moreover, and importantly, the merits of the grounds for relief can be addressed in relatively simple fashion on the existing record, establishing that judicial economy favors disposition on the merits.

- Ground Thirteen: Attorney Nash performed ineffectively by failing to insist on a third suppression hearing. *See id.* at 15.

- Ground Fourteen: Attorney Nash performed ineffectively by failing to ask to continue the third suppression matter. *See id.*

- Ground Fifteen: Attorney Nash performed ineffectively by failing to request leave to reply to the Government's reply on the third suppression matter. *See id.*

- Ground Sixteen: Attorney Nash performed ineffectively by failing to interview or depose witnesses to establish Kellogg's overnight guest status at the White farm. *See id.*

- Ground Seventeen: Attorney Nash performed ineffectively by failing to enter statements on the record. *See id.*

- Ground Eighteen: Attorney Nash performed ineffectively by failing to advise Kellogg that his conditional guilty plea would foreclose obtaining evidence not in the record. *See id.* at 19.

- Ground Nineteen: Attorney Nash performed ineffectively by failing to advise Kellogg that his conditional guilty plea would foreclose any opportunity to cross-examine White. *See id.*

- Ground Twenty: Attorney Nash performed ineffectively by failing to raise issues on direct appeal. *See id.* at 4- 8; DE #146-4 at 1-2.

- Ground Twenty One: The District Court erred in denying Kellogg the due process right to a fair trial.[11] *See* DE #146 at 17.

---

[11] As to Grounds Twenty One through Twenty Seven, the Court notes that, based on the record of direct appeal, these issues would be subject to procedural default analysis. *See Elzy v. United States*, 205 F.3d 882, 887 (6th Cir. 2000) (noting that courts may raise procedural default sua sponte). While ineffective assistance of counsel claims cannot generally be procedurally defaulted, *Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003), claims of error by a District Court, like any other constitutional or non-constitutional issues, can be.

A section 2255 motion cannot substitute for a direct appeal. *See Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947) ("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."); *Peveler v. United States*, 269 F.3d 693, 698-703 (6th Cir. 2001) (analyzing procedural default). To assert a claim not raised on direct review, a defendant ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Additionally, "[i]f claims have been forfeited by virtue

of ineffective assistance of counsel, then relief under § 2255 would be available" subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *See Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Kellogg had awareness, at least on some level, of potential procedural default problems, based on his efforts to justify failure to raise issues on direct appeal. *See* DE #146; DE #146-4. Defendant/Movant consistently pointed to ineffective assistance of counsel in making the direct appeal as cause for any procedural default, and he also noted his lack of legal knowledge. *See* DE #146 at 4 ("Appellet [sic] counsel was replacement counsel for Mr. Milner, petitioner was unaware there was a procedure to do so."); *id.* at 5 ("Appellet [sic] counsel was 'trial' counsel – he may not have perceived these issues."); *id.* at 6 ("Replacement counsel for Mr. Milner was Patrick Nash – Appellet [sic] counsel."); *id.* ("Appellet [sic] counsel was 'trial' counsel."); *id.* at 7 ("Appellate counsel handled the direct appeal – petitioner was lay person unschooled in law and was not aware counsel was deficient in performance at the time."); *id.* at 8 ("Petitioner was relying on appellate counsel to ferret out the legal points to raise on appeal – petitioner is a lay person unschooled in the law."); DE #146-4 (Corrected Pages) at 1 ("Petitioner relied on Appellett [sic] Counsel's efforts, believing he would perform effectively."); *id.* at 2 ("Appellet [sic] Counsel was 'Trial/Plea Bargan [sic]' counsel. Petitioner could not have known that his Federally Appointed Counsel would provide inadequate assistance and advice until after counsel had been deficient during the legal process."); *id.* ("As a lay person, petitioner was at a disadvantage in the subtlies [sic] of the law and put his faith in the Courts and legal process to follow the Constitution and provide a fair trial. Petitioner relied on Appointed Counsel to know the law and protect his rights."). Indeed ineffective assistance of counsel can, if proven, constitute cause for procedural default. *See Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986).

Here, the United States made no mention of procedural default in its response. *See* DE #155. Instead, the Government argues that issues litigated on direct appeal – here, the suppression issues – may not be relitigated in a collateral proceeding. *See id.* at 2-3. Of course, asserting that issues have been decided on direct appeal is the exact opposite of a procedural default circumstance, where the issues in question had not been raised on direct appeal. Based on this argument, which cannot be taken as raising procedural default in any way, the United States has implicitly waived that defense. *See Cone v. Bell*, 129 S. Ct. 1769, 1791 n.6 (2009) (noting that "procedural default may be waived if it is not raised as a defense) (citing *Banks v. Dretke*, 124 S. Ct. 1256, 1280 (2004)); *Flood v. Phillips*, 90 F. App'x 108, 114-15 (6th Cir. 2004) (discussing waiver of procedural default as a defense and declining to raise the issue *sua sponte*).

While courts may sua sponte raise the issue and order a defendant/movant to show cause and prejudice for the default, *see Elzy*, 205 F.3d at 886, here the Court, in its discretion, proceeds on the merits for Grounds Twenty One through Twenty Seven. As noted previously, Kellogg's section 2255 motion has been pending since September 8, 2008 – more than two years – and a show-cause order at this point would only elongate the proceedings further. Moreover, Defendant/Movant may credibly argue that, where appellate counsel raised questions regarding the suppression of evidence, those issues, which underpin the majority of grounds for relief in the section 2255 motion, have been preserved. Judicial economy favors addressing the merits of those grounds for relief here.

- Ground Twenty Two: The District Court erred in denying Kellogg a fair opportunity to raise issues. *See id.*

- Ground Twenty Three: The District Court erred in denying Kellogg a fair opportunity to confront witnesses. *See id.*

- Ground Twenty Four: The District Court erred in denying Kellogg a fair opportunity to present evidence. *See id.*

- Ground Twenty Five: The District Court erred in denying Kellogg a fair opportunity to be secure in his own effects. *See id.*

- Ground Twenty Six: The District Court erred in giving undue weight to the unsworn, unauthenticated statement of White. *See id.* at 17-18.

- Ground Twenty Seven: The District Court erred in making contradictory factual findings with regard to the second and third motions to suppress. *See id.* at 18.

The Court evaluates each of these grounds in turn.

As to each of these grounds, the Court finds no evidentiary hearing to be needed. That is, the filings and records show conclusively that Defendant/Movant should receive no section 2255 relief.

## A. Alleged Ineffective Assistance of Counsel – Grounds One to Twenty

Kellogg raises numerous ineffective assistance claims against his first and second trial counsel. *See* DE #172 at 1, 3-7. The majority of these contentions relate either to the various suppression motions or the guilty plea.

To establish ineffective assistance of counsel, the movant must show that his counsel's performance was deficient and that the deficiency prejudiced him. *See Strickland v. Washington*, 104 S. Ct. 2052 (1984). First, the burden falls upon the defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 2064. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment." *See id.* Here, the court's review of counsel's conduct is highly deferential and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 2065. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *See id.*

Second, to establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *See id.* at 2066.  In a guilty plea context, a movant establishes prejudice by demonstrating that, but for counsel's deficient performance, he would not have pled guilty and would have required a trial. *See Woods v. United States*, No. 07-5644, 2010 WL 3927243, at *8 (6th Cir. Sept. 23, 2010) (slip copy) (quoting *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)); *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (applying standard in the context of a conditional guilty plea). Similarly, in a suppression context, a movant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ." *See Kimmelman v. Morrison*, 106 S. Ct. 2574, 2582-83 (1986). Courts can approach the *Strickland* analysis in any order, and an insufficient showing on either prong under *Strickland* ends the inquiry. *See Strickland*, 104 S. Ct. at 2069.

The Court begins its analysis with the allegations against Kellogg's first trial counsel, Milner, and then proceeds to those against his second trial counsel, Nash. At the outset, the

Court notes that Defendant/Movant has placed very little evidence in the record, despite bearing the burden to prove allegations by a preponderance of the evidence. Aside from copies of various cases,[12] Kellogg only placed an excerpt of one transcript in the record. *See* DE #146-2 (Exhibits) at 11-16. Magistrate Judge Todd even permitted a supplemental filing by counsel for Defendant/Movant, and that filing brought forth no evidence on the section 2255 allegations.

### 1. Ground One – Failure to Interview

To begin, Kellogg asserts that Milner performed ineffectively by failing to interview White, White's family, and Defendant/Movant's own daughter to establish overnight guest status. Kellogg alleges, by implication, that these witnesses would have provided supportive testimony; however, he provides no evidence in this regard.

Kellogg fails to establish ineffective assistance under *Strickland*. Regarding White, counsel attempted multiple times to contact the witness by telephone and mail without success. *See* DE #155-2 at ¶ 3. Due to lack of success in reaching White through those means, counsel moved over time for three separate subpoenas to be served by the United States Marshal Service. *See* DE #47; DE #56; DE #66. During the second suppression hearing, after counsel learned that White had not been served and had yet again not appeared, counsel still raised the issue with the District Court and secured that Court's instruction – the fourth such effort – for the Marshals to exercise their best efforts to serve White moving ahead in the case. *See id.* Defendant/Movant

---

[12] Specifically, Kellogg includes a copy of the Sixth Circuit's opinion on direct appeal with his section 2255 motion. *See* DE #146-2 at 1-10; DE #146-5 at 1-3. Additionally, with Defendant/Movant's unverified response, he submits one handwritten page titled "Legal Argument," *see* DE #158-2 at 1, and over eighty pages of printed or photocopied cases. *See* DE #158-2 at 2-19; DE #158-3; DE #158-4; DE #158-5; DE #158-6; DE #158-7. Some of these copies had highlights and annotation, presumably by Kellogg. *See, e.g.*, DE #158-5 at 6 (underlining); *id.* at 7 (underlining and asterisks in margin).

essentially faults Milner because White failed to appear at an evidentiary hearing, but counsel utilized the tools available to him in an objectively reasonable and responsible manner. White even later confirmed what Milner suspected: White wanted not to be involved. *See* DE #109-2 at 5-7.

As to White's family and Kellogg's daughter, Defendant/Movant notably never indicates what those parties would have offered if interviewed. Kellogg advanced no suppression theories, by Milner, that would have relied on their testimony. The first suppression motion concerned officer jurisdiction to search in Woodford County, authority to search in containers found at the farm, and expectation of privacy in the barn. *See* DE #38. Here, the privacy expectation purportedly emerged from how Defendant/Movant stored the items, not his standing on the farm. *See id.* at 2 ("The Defendant had a legitimate expectation of privacy to store the items in the manner and fashion in which same were stored . . . "); *id.* ("Again, the items were securely stored and were concealed so as to create and [sic] expectation of privacy on the part of the Defendant."). The second suppression motion addressed jurisdiction again and whether White could consent to accessing of Kellogg's hard drive. *See* DE #67.

Even if Kellogg established deficient performance under *Strickland*, he fails to prove prejudice. *See Goldsby v. United States*, 152 F. App'x 432, 436 (6th Cir. 2005) (discussing an ineffectiveness claim for failure to interview and call a witnesses and noting that, where a movant produces no evidence that the interviews would have made a difference, no section 2255 relief should be afforded); *Mitchum v. United States*, 73 F. App'x 796, 798 (6th Cir. 2003) (noting that, as to suppression motions, proving prejudice requires a showing that, the result of the proceeding would have been different). Regarding White, Defendant/Movant has placed no

evidence in the record that White would have said anything different than reported by Detective Gutierrez. Kellogg cannot possibly establish prejudice by reporting a simple hope and wholly unsubstantiated claim that a witness, if brought into court, would reverse representations previously made to law enforcement officers. Moreover, Defendant/Movant has not competently shown anything that White's family or his own daughter would say. Accordingly, Kellogg failed to prove that the witnesses, if interviewed, would have changed the result of the suppression matter. More generally, Kellogg failed to prove that, with interviews of the witnesses in question, he would have refused to enter the conditional guilty plea and insisted on a trial.

2. Ground Two – Failure to Request Continuance

For his second complaint, Kellogg asserts that Milner provided ineffective assistance of counsel by not requesting a continuance of the second suppression hearing, once White failed to appear on subpoena. According to Defendant/Movant's theory, the continuance would somehow have produced a different result.

Kellogg fails to establish deficient performance of counsel. As noted above, the record reflects repeated efforts by Milner to compel White to attend suppression hearings and offer testimony. *See* DE #47; DE #56; DE #66. Counsel explains the decision not to seek a continuance of the second suppression hearing:

> Because White had consented to the search, and given White's failure to return any of my phone calls, I believed he would not be willing to provide any favorable information. Because I was unsure of White's testimony, I opted not to seek a continuance to obtain White's testimony as a future suppression hearing, but requested the court to attempt to serve White to secure his appearance at Kellogg's trial. I believed that it would not be to Kellogg's benefit to push for White's appearance since the statements White made to law enforcement officers was [sic] in contrast to Kellogg's claims. I also did not believe it likely that White would contradict his earlier statements to law enforcement that he had not given White permission to store property in the barn.

*Id.* at ¶ 5. This strategy stands as objectively reasonable because White had resisted multiple opportunities to respond to counsel, White had not appeared despite several subpoenas, and White could have been subject to criminal penalties for providing false information to law enforcement if he changed his account to match that of Kellogg. *See, e.g.*, 18 U.S.C. § 1001; Ky. Rev. Stat. Ann. § 519.040. Under these circumstances, Milner reasonably believed White would not offer favorable testimony, so reasonably declined to move to extend the suppression hearing. At this time, Milner had called Kellogg, who offered testimony that could have persuaded the District Court. Moreover, counsel elected not to give up on White, but instead to obtain Judge Hood's approval of further service on White to procure his testimony for trial. Given Defendant/Movant's insistence that White would offer supportive testimony and Kellogg's testimony in the record on the suppression motion, the decision to seek White's testimony for trial proves eminently reasonable. In fact, Milner had substantial reason to believe that White's testimony would be harmful to Kellogg, based on the record to date, so counsel's continued pursuit of service on White reflects considerable care in listening to Defendant/Movant. Here, Milner performed well and certainly not deficiently.

Even if Kellogg showed deficient performance, he has not proven prejudice. Procedurally, defense counsel could have moved to reopen the hearing, had new evidence been discovered, so failing to move for a continuance would not, in its own right, prejudice Defendant/Movant in any way. Once new counsel had been appointed, that counsel filed a third motion to suppress, which purported to raise any issues not previously brought before the District Court, and Judge Hood permitted that filing and additional consideration, despite denying two previous challenges to the same evidence. Moreover, in that third suppression

matter, the Court received a telephone transcript, sworn to be accurate under penalty of perjury, of a recorded call between White and Detective Gutierrez, where White indicated he stood by his prior statements to law enforcement. Here, Kellogg has offered no statement from White (or any other witness) that purportedly would have been introduced, through testimony, at a continued second suppression hearing. In short, Defendant/Movant offers only hope that White, if placed on the stand, would offer supportive testimony. This hopeful but unsupported argument cannot establish that Kellogg's suppression result would have been any different. More generally, Defendant/Movant has not established that he would not have otherwise entered into the conditional guilty plea and instead would have insisted on going to trial.

### 3. Ground Three – Waiver of Compulsory Process

As his third ground for relief, Kellogg argues that Milner provided ineffective assistance of counsel by waiving compulsory process of White for the second suppression hearing. The Court understands this ground essentially to be ineffective assistance for failure to pursue enforcement of the subpoena for White under Federal Rule of Criminal Procedure 17. *See* Fed. R. Crim. P. 17(g). Otherwise, this ground would effectively be the same as Ground 2 in that Kellogg would be challenging Milner's strategy in seeking White's testimony at trial, but not further seeking White for the second suppression matter.

As to subpoena enforcement, Kellogg has not proven deficient performance of counsel under *Strickland*. As noted above, Milner explained his strategy in not seeking White's testimony further in the suppression context. *See* DE #155-2 at ¶ 5. This strategy stands as eminently reasonable, given all the efforts that Milner made to know and secure White's testimony. Applying his years of experience in criminal defense, Milner concluded that White

wanted no involvement in the matter and would not likely contradict his earlier statements to law enforcement, where such contradiction may subject him to criminal penalties. Notwithstanding these concerns, Milner still listened to his client and ensured that the United States Marshal would again attempt to serve a subpoena on White for the trial, and the Court granted that motion. While Kellogg now insists that hauling White into court and placing him on the stand would have resulted in his offering testimony that contradicts his statements to law enforcement, the record shows no reasonable basis in fact for this belief. Milner's decision not to seek a third subpoena stands as objectively reasonable, and thus Defendant/Movant has shown no deficient performance.

Even if Kellogg proved deficient performance, he has not demonstrated prejudice. At the third suppression matter, the District Court heard again from White, this time through a transcript of a recorded telephone conversation provided by Detective Gutierrez. While this transcript rather obviously has less impact than live testimony, hearsay has long been permissible in the suppression context, and notably, Detective Gutierrez swore under penalty of perjury to the accuracy of the transcript. Based on the statements by White, as reported by Detective Gutierrez, enforcing the subpoena against White would have significantly harmed Kellogg's case for suppression, not helped that case. Defendant/Movant has suffered no prejudice under *Strickland* here. Kellogg has not proven either that enforcing the subpoena would have produced a different result in the suppression matter or that, if the subpoena had been enforced, he would not have pled guilty and would have insisted on a trial.

### 4. Ground Four – Failure to Ask Critical Questions

Next, Kellogg asserts that Milner performed ineffectively by failing, during direct

examination of Defendant/Movant at the second suppression hearing, to ask about Kellogg's overnight guest status at the White farm. Under Defendant/Movant's theory, if counsel had only asked different questions, the result would likewise have been different.

Here, Kellogg has not shown constitutionally deficient performance under *Strickland*. The motion hearing transcript reflects multiple questions asked by Milner about Defendant/Movant's status at the White farm, including the following exchange:

Q: And would you tell me, were you permitted to be at the James White farm?

A: Yes

. . .

Q: Please explain the circumstances by which you were permitted to be there.

A: I met James White probably six, eight months earlier where I worked at Raytheon. We worked on the same shift.
    We got to be friends. We would have lunch together.
    And he – him and my family and his family, we would go do things. I went horseback riding on his property.
We – our kids played together. We had Thanksgiving dinner and Christmas dinner and exchanged gifts and birthday parties and just friends.
    He eventually – because I lived in an apartment here in Lexington, he had a place where I could work on my vehicles.
    So I worked – he allowed me to work on a vehicle in his barn.
    He had several large dogs that I got friendly enough with that they would allow me on their property and wouldn't attack or anything.
    Mr. White told me if I needed to use the barn to work on something I could come up there.
    Him and I also would go target practice, and he said I could come over to his house – again, even if he wasn't there – and shoot the rifle.
    I had problems with my vehicle, and I was – I had some stuff in my car and I asked him if I could leave it in his barn.
    I showed him some containers and told him I had some weapons and things.
    He said I could. They were up in the loft attic or loft area, it's a second floor of his hay barn.
    We put them behind some stuff so his kids wouldn't get in them.
    And at the time I signed – well, some of the containers like a duffel bag

had my name tag on it.

        And I signed my initials on the other ones so we would know which ones were mine.

DE #102 (Transcript) at 5 lns. 18-20, 23-25; 6; 7 lns. 1-10. Milner continued to question as follows:

Q: So Mr. White granted you permission to use this facility to store items; is that correct?

A: Correct.

Q: And were you permitted to come and go of your own free will in this barn?

A: Yes, he – that's because sometimes he – I was there and the family was gone.
        And I would work on my car or, you know, check on the dogs and stuff.
        That was just – he was, again, a fairly good friend.
        We just had Christmas dinner. He invited me and – invited us to church.
        And him and my daughter and the rest of the family, we went to it was either his or her – his or his wife's parents' house for another Christmas thing and like a big party. We were friends.

*Id.* at 8 lns. 7-23. As the testimony indicates, Milner needed only to direct Defendant/Movant to the topic generally and Kellogg provided detailed testimony. In this scenario, where Defendant/Movant spoke to the Court about his relationship with White and how he came to be at the White farm, Milner's general prompts regarding Kellogg's status at the farm stand as objectively reasonable. After cross-examination and consideration of the full record, the District Court gave little weight to Defendant/Movant's testimony and found against him on the suppression issue. However, Kellogg, under questioning by Milner, certainly had every opportunity to provide Judge Hood with testimony about his status on the White farm.

        Even if Kellogg demonstrated deficient performance, he failed to establish prejudice. When replacement counsel submitted a new suppression motion – the third suppression motion in this case – he provided a detailed affidavit from Defendant/Movant, which purported to report

more information about the Kellogg-White relationship. *See* DE #107-2 (Affidavit) at ¶ 7. Essentially, not only did Defendant/Movant have an opportunity to provide testimony on the issue in question during the second suppression hearing, but he also had a chance, with the third suppression motion, to offer even more information. Given these events, Kellogg has not shown that the suppression result would have been different. More generally, Defendant/Movant has not proven that he would not have entered the conditional guilty plea if Milner had only asked a few different questions.

### 5. Ground Five – Failure to Subject Motions to Adversarial Testing

Kellogg next argues that Milner provided ineffective assistance of counsel by failing to subject the Government's pretrial motions to meaningful adversarial testing. However, the United States made only four pretrial motions after appearance by Defendant/Movant. *See* DE #7 (Minute Entry for Initial Appearance reflecting oral motion for pretrial detention); DE #18 (Motion for Arraignment); DE #24 (Motion for Arraignment); DE #51 (Motion for Arraignment). Kellogg fails to specify which pretrial motions he believes should have been subjected to meaningful adversarial testing, and he further fails to indicate what he believes should have occurred and thus would constitute such adversarial testing.

Defendant/Movant fails to establish any constitutionally deficient performance by Milner. Under Federal Rule of Criminal Procedure 10, "[a]n arraignment must be conducted in open court" unless an appropriate waiver has been signed, tendered, and accepted by the court. *See* Fed. R. Crim. P. 10. Given that requirement, the purpose of which, in relevant part, is to ensure a defendant has notice of the charges against him, surely Kellogg cannot be suggesting that Milner should have challenged the United States's motions for arraignment.

To the extent Defendant/Movant alleges that Milner should have subjected the Government's motion for pretrial detention to meaningful adversarial testing, Kellogg likewise shows no constitutionally deficient performance by Milner. Under 18 U.S.C. § 3142(f)(1)(A) and (f)(1)(E), the United States had a right to make the detention motion. *See* 18 U.S.C. § 3142(f)(1)(A) ("crime of violence"), (E) ("involves a minor victim"). Milner represented Defendant/Movant at the detention hearing and made such sufficient arguments that United States Magistrate Judge Todd ordered the hearing to be continued, pending further investigation regarding a prospective site of release. *See* DE #14 (Order). At that hearing, counsel cross-examined each of the Government's three witnesses. *See* DE #101 (Transcript) at 44-52, 54-55 (Recross), 61-62, 64-65. Milner further represented Kellogg at the continued detention hearing. *See* DE #20 (Order).  At that hearing, Milner argued against the Government's evidence. *See, e.g.*, DE #107 (Transcript) at 22 lns. 20-25; 23 at lns. 1-4, 6-11. Milner cross-examined the United States's witness. *See id.* at 26-35. In short, counsel actively represented Kellogg regarding the pretrial detention motion, subjecting that motion to objectively reasonable opposition, and in the absence of any more specific allegations from Defendant/Movant, the Court finds no evidence of deficient performance of counsel.

Kellogg has likewise failed to demonstrate prejudice under *Strickland*. As to the arraignment motions, the Court may, in its discretion, have accepted a compliant waiver from Defendant/Movant, but Kellogg cannot seriously allege that, if only the Court had accepted a waiver of arraignment, he would not have entered a conditional guilty plea and would have insisted on going to trial. Likewise, Defendant/Movant has not established that, if the detention motion of the United States had been subjected to further adversarial testing, he would have

refused to enter the conditional guilty plea and would have insisted on a trial. Kellogg placed no evidence in the record in support of either of these claims for good reason: neither makes any sense, so evidence of prejudice would be essentially impossible to obtain and tender.

### 6. Ground Six – Failure to Acquire Exculpatory Evidence

Next, according to postconviction counsel for Kellogg, Milner provided ineffective assistance of counsel by failing to acquire exculpatory evidence from Ohio. Of course, Kellogg placed none of this evidence in the record, so the Court has only general descriptions of what the evidence might have been. For example, Defendant/Movant describes:

> After the petitioner's arrest in April 2000, the diary and some papers (notes) of the accuser were discovered which failed to mention any of the alleged crimes and contained exculpitory [sic] evidence refuting many of the allegations. This diary was brought to the petitioner's state trial and though mentioned during the trial, was not marked into evidence for the trial. Some weeks later (after the acquital [sic] of the petitioner of the state charges in 08/27/2003), a search at the petitioner's address was conducted and a box of evidence from the state trial was seized . . . . Mr. Milner mentioned he was going to review the materials containing the diary at the motion hearing when he was relieved as petitioner's counsel on 01/07/2005 . . . . Mr. Nash never obtained copies of the diary of the letters to be used as exculpitory [sic] / impeachment evidence for trial – and now the diary and letters seem to have been lost.

DE #146 at 15-16 (citations to motion hearing transcript omitted); *see, e.g.*, DE #104 at 4 ("some documents"); *id.* at 7 ("boxes" and "personal goods"); DE #105 at 16 ("diaries," "run-away note," "school records," "medical records," and "transcripts"); *id.* at 19 ("statements"); *id* at 21 ("diaries and various things" and "an ad or poster").

Kellogg fails to establish constitutionally deficient performance under *Strickland*. Without the evidence alleged to be exculpatory, or some other showing establishing in detail what that evidence would be, Defendant/Movant cannot show deficient performance. *See Brannon v. United States*, No. 1:03-CR-98, 2010 WL 1492225, at *8 (E.D. Tenn. Apr. 14, 2010)

(slip copy) (analyzing a similar section 2255 ground for relief, where the movant actually tendered documents with his motion, but finding no deficient performance under *Strickland*).

Factually, Kellogg's claim has no merit whatsoever. The record specifically demonstrates that Milner spent a day in a police warehouse in Columbus, Ohio, with the AUSA and another prosecutor to review all of the evidence there. *See* DE #105 at 21-22. During that meeting, Milner identified specific items and requested that the Government bring those to any trial of Kellogg. *See id.* at 21. Milner followed up with a written list of the items requested, and the United States agreed to bring those items for defense use at the trial. *See id.* at 21-22. Not only did Milner provide objectively reasonable performance, but he also took the very actions that Kellogg now complains that counsel failed to undertake.

Even if Kellogg established deficient performance, he fails to prove prejudice. Defendant/Movant purportedly had full knowledge of the evidence to be acquired, yet chose to plead guilty anyway. *See Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir. 1985) (discussing the need to prove prejudice in the context of an alleged *Brady* violation in a guilty plea case). That is, law enforcement seized the box of state-court evidence at issue from Kellogg's possession, so he, both through the state-court trial and his eventual physical possession of the box, had to have known the contents. Milner had reviewed the evidence fully and requested items for trial, so Kellogg simply cannot establish any prejudice here. He chose to plead guilty conditionally, despite knowledge of what the Ohio evidence would show and awareness that his counsel had requested some of that evidence for trial. The Court ultimately also questions whether evidence from the Ohio prosecution would have been much use, if any, in the instant matter because Kellogg here faced charges founded primarily on the receipt and possession of

child pornography under 18 U.S.C. § 2252.

### 7. Ground Seven – Failure to Discuss and Transmit Exculpatory Evidence

As a seventh ground for relief, Kellogg, by postconviction counsel, asserts that Milner performed ineffectively by failing to discuss the purported exculpatory evidence from Ohio with replacement counsel and failing to transmit same to Nash. Under Defendant/Movant's theory, such discussion and transmission would have altered the result in the case.

First, Kellogg failed to establish constitutionally deficient performance of counsel. As noted above, Milner specifically arranged for the Ohio evidence to be available at trial. *See* DE #105 at 21-22. When visiting Ohio, Milner could not take custody of the evidence, so he had no possession of materials to transfer to Nash. Notwithstanding this reality, the record demonstrates that Nash discussed traveling to Ohio to review records with the AUSA on the case, so rather obviously had been made aware of or discovered the Ohio evidence. *See* DE #138 at 3 lns. 15-20. Nash's knowledge suggests a potential conversation with Milner, but no evidence exists in the record one way or the other. Kellogg certainly has not shown, under an objectively reasonable standard, that Milner performed deficiently by failing to discuss the potential evidence with Nash.

Even if Kellogg established deficient performance, he fails to show prejudice. As noted, Nash had knowledge of the evidence and plans to review that evidence firsthand with the AUSA on the case. Milner had already requested some items for trial. Moreover, Defendant/Movant had knowledge of the evidence himself, but still chose to enter a conditional guilty plea. Under these circumstances, no *Strickland* prejudice has been established.

### 8. Ground Eight – Failure to Advise Guilty Plea Would Preclude Additional Evidence

Kellogg additionally argues that Milner performed ineffectively by failing to advise Defendant/Movant that pleading guilty would preclude entry of additional evidence into the record regarding suppression matters. Of course, Kellogg had different counsel when he pled guilty, but presumably, based on this allegation, Milner had discussed a potential guilty plea with Defendant/Movant.

Kellogg fails to prove constitutionally deficient performance of counsel. Defendant/Movant has placed no evidence in the record that he ever had any discussions with Milner about a guilty plea, so the Court only has an assumption, based on Kellogg's allegation and the fact that criminal defense practice often involves addressing the possibility of a guilty plea with clients. Of course, as a technical matter, Defendant/Movant's conditional guilty plea may not have precluded additional evidence, had the direct appeal been successful and the guilty plea been withdrawn. Here, though, Kellogg's direct appeal failed. Defendant/Movant has the burden of proof in the section 2255 context, and in the absence of any evidence whatsoever, the Court certainly cannot find that he has established deficient performance of counsel.

Even if Kellogg established deficient performance, he failed to prove prejudice. At Defendant/Movant's rearraignment, Judge Hood explained how the conditional guilty plea would operate:

> THE COURT: It means -- for the purpose of the record, it means that if -- well, on appellate review, it is decided that I erred in making some of these decisions that I have pretrial on the motion to suppress and motions to dismiss, then you -- your plea agreement will be set aside, do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

*See* DE #131 at 7 ln. 25; *id.* at 8 lns. 1-6. Here, the District Court conveyed that the Sixth Circuit would determine if any errors occurred at the trial-court level, not hold a new hearing or open the

record on suppression matters. At sentencing, Judge Hood again described the conditional guilty plea process:

> THE COURT: All right. The defendant is -- the defendant has a right to appeal his, I guess, his conviction because it was a conditional guilty plea, to the United States Court of Appeals for the Sixth Circuit, which on proper appeal will make a determination as to whether I committed an error of law in imposing -- or in ruling on his motion to suppress.
>
> If -- if that's the case, then the defendant can make a motion to set aside his guilty plea.

*See* DE #137 at 16 lns. 9-17. This description again indicates the Sixth Circuit would only be determining whether the District Court erred. After this description, and the remainder of the notice of right to appeal, Judge Hood asked Kellogg if he had any questions, and Defendant/Movant said no. *See id.* at 17 lns. 5-6. Given the rearraignment description, which came before entry of a guilty plea, and the second description at sentencing, about which Kellogg had no questions, the Court cannot find that Defendant/Movant misunderstood the Sixth Circuit process at all, much less at the advice of counsel. Any erroneous advice – or failure to advise – by counsel would have been sufficiently cured by Judge Hood's pre-plea description, and thus Kellogg cannot prove prejudice. Specifically, he cannot establish that he would not have entered the conditional guilty plea, had he known that such plea would preclude presenting additional evidence.

### 9. Ground Nine – Failure to Advise Guilty Plea Would Preclude Cross-Examination

Next, Kellogg asserts that Milner provided ineffective assistance of counsel by failing to advise Defendant/Movant that pleading guilty would foreclose any opportunity to cross-examine White regarding his hearsay statements, as reported by Detective Gutierrez. Kellogg suggests, by implication, that he would not have pled guilty if he had known that he could not have White

cross-examined after entry of the plea.

Kellogg fails to demonstrate deficient performance of counsel under *Strickland*. As a procedural matter, Milner could not have cross-examined a witness who never offered direct testimony. That is, if a witness never testifies, then no cross-examination occurs. As a result, Defendant/Movant's complaint appears to be a repackaged concern about not having an opportunity to secure White's testimony during the suppression hearings. Milner explained that strategy, and the Court again finds the strategy to be objectively reasonable. Where counsel has made telephone calls, sent correspondence, and secured multiple court-ordered subpoenas for a witness, that attorney has made objectively reasonable efforts to secure the witness. A veteran defense counsel's determination that, based on the nonresponsiveness of a prospective witness and prior statements that witness provided to law enforcement, the witness would not offer supportive testimony stands as entirely reasonable as well. Milner sought an additional subpoena of White for trial, based on Kellogg's continued insistence that White would offer supportive testimony, and at that time, had Defendant/Movant insisted on a trial, he would potentially have had an opportunity to question White by counsel.

Even if Kellogg shows deficient performance, he cannot prove prejudice. Defendant/Movant had no constitutional right to confront or cross-examine White, who offered no direct testimony, in the suppression context. *See, e.g.*, *United States v. Matlock*, 94 S. Ct. 988, 993-94 (1974); *United States v. Davis*, 361 F. App'x 632, 636 (6th Cir. 2010). At rearraignment, the District Court advised him that, as a result of pleading guilty, he would be giving up his right to cross-examine witnesses:

> THE COURT: You would have the right to see, hear and have cross examined all witnesses against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

*See* DE #131 at 11 lns. 1–13. The Court continued:

THE COURT: And you will have waived or given up your right to trial. as well as those rights associated with the trial that I have just described, do you understand that?

THE DEFENDANT: Yes, Your Honor.

*See id.* at 12 lns. 11-15. After acknowledging that he would be giving up the right to cross-examine witnesses by pleading guilty, Kellogg chose to plead guilty. On that basis, he can show no prejudice here, even if his attorney provided deficient performance.

### 10. Ground Ten – Failure to Move for Ineffective Assistance of Counsel Ruling

As a tenth ground for relief, Kellogg argues that Nash provided ineffective assistance of counsel by not moving for an ineffective assistance of counsel ruling against Milner. Defendant/Movant offers no discussion of the ruling that should allegedly have been sought.

Kellogg fails to demonstrate deficient performance of counsel under *Strickland*. The Court knows of no authority or basis for an ineffective assistance of counsel ruling at the trial level.

Kellogg may be alleging that Nash should have alleged ineffective assistance of counsel against Milner on direct appeal. However, in general, ineffective assistance of counsel claims should be brought under section 2255, not on direct appeal, so that the reviewing court will have a complete record to assess. *See Massaro v. United States*, 123 S. Ct. 1690, 1693-94 (2003); *United States v. Lewis*, 605 F.3d 395, 400 (6th Cir. 2010). Here, Kellogg may argue that the record had been completed as to Milner's performance since Nash replaced Milner and thus a reviewing court could have been able to make a determination. However, given Kellogg's entry

of a conditional guilty plea, and thus how reversal on direct appeal would have resulted, potentially, in a trial of this case, Nash's focus on the grounds that could produce such reversal operates as objectively reasonable strategy here. The record reflects no evidence that Defendant/Movant instructed Nash to raise ineffective assistance on appeal. In the absence of such an explicit instruction, and given legitimate questions about the finality of any record that a court would review at the posture indicated, no deficient performance occurred.

Even if Kellogg established deficient performance, he fails to demonstrate prejudice. Defendant/Movant conditionally pled guilty, leaving the possibility of a reversal and thus a resurrection of trial rights in the balance pending resolution of direct appeal. Certainly, had the appellate court reversed, Kellogg would have had an opportunity to pursue any trial-court rulings. To the extent that Defendant/Movant challenges Nash's strategy on direct appeal, the Court notes that Kellogg lost no ability to raise ineffective assistance of counsel issues under a section 2255 posture. In fact, Defendant/Movant raised twenty such issues here, and the Court has proceeded with a merits review of those. No prejudice exists.

### 11. Ground Eleven – Failure to Review Case Record

Additionally, Kellogg alleges that Nash provided ineffective assistance of counsel by failing to review the case record. Here, Defendant/Movant appears to suggest that, had Nash prepared more thoroughly, the case would have been resolved differently.

Kellogg fails to prove constitutionally deficient performance of counsel under *Strickland*. His principal allegation is that Nash failed to note the important Ohio evidence, as previously discussed in the record in proceedings involving former counsel Milner. However, the case record shows that Nash discussed traveling to Ohio to review records with the Assistant United

31

States Attorney on the case. *See* DE #138 at 3 lns. 15-20 (AUSA: "If we're going to Columbus to look at the evidence, though I'd prefer that we did it in the winter than the summer. They don't have any air conditioning, and I'll tell him right now, it's not a very comfortable place to review evidence at the Columbus Police Department evidence warehouse."). The record ultimately remains unclear whether Nash learned about the Ohio evidence from a review of the record or from Milner, but the record establishes conclusively that Nash's preparation included the Ohio evidence. In light of this documentation to the contrary, Defendant/Movant has not proven deficient performance.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. That is, if Nash had knowledge of the Ohio evidence and had planned to travel to Columbus to review that evidence, Defendant/Movant cannot say that alleged failure of counsel to learn about the Ohio evidence resulted in a constitutionally prejudicial result. Put simply, Nash planned to prepare for trial exactly how Kellogg argues that counsel should have proceeded, so Defendant/Movant cannot credibly establish that, with different preparation by Nash, Kellogg would not have pled guilty and would have insisted on proceeding to trial. Again, Kellogg does not detail what evidence existed and how it would have impacted any plea.

## 12. Ground Twelve – Failure to Obtain Exculpatory Evidence

Next, Kellogg asserts that Nash performed ineffectively by failing to acquire exculpatory evidence from Ohio. Under Defendant/Movant's theory, if counsel had sought to acquire the evidence more in advance of trial, then the result would not have been entry into a conditional guilty plea.

Kellogg fails to prove deficient performance of counsel under *Strickland*. Nash planned

to travel to Ohio with the AUSA to review evidence prior to trial. *See* DE #138 at 3 lns. 15-20. Apparently, Defendant/Movant believes that counsel should have made the trip more quickly, but the timing of an evidence review seems, beyond any practical considerations such as an attorney's competing commitments, wholly a matter of strategy. Here, Nash spent more time working on the suppression matters and negotiating a plea agreement, rather than traveling to Ohio right away. This strategy stands as objectively reasonable because the suppression matters, if successful, would have potentially foreclosed the Government's chief proof of multiple counts under the indictment. Additionally, proceeding with plea discussions keeps a defendant apprised of all of his options in the case. Defendant/Movant has established no deficient performance on this ground.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. Defendant/Movant chose to enter the conditional guilty plea, rather than insisting on a trial, and in making his decision, Kellogg had knowledge of the allegedly exculpatory evidence from Ohio. Had this evidence been significant to the case in Defendant/Movant's reasoning, he would not have pled guilty in the first place. Kellogg has not established that, if Nash had acquired the Ohio evidence earlier, Defendant/Movant would not have entered the conditional guilty plea.

### 13. Ground Thirteen – Failure to Insist on a Third Suppression Hearing

Kellogg argues that Nash provided ineffective assistance of counsel by not insisting that Judge Hood conduct a third suppression hearing. Apparently, Defendant/Movant believes that, by insisting on such hearing, counsel could have forced the District Court to conduct same or changed Judge Hood's mind about the necessity of the hearing.

Kellogg fails to prove deficient performance of counsel under *Strickland*. Notably,

Defendant/Movant had no right to a third suppression hearing. *See United States v. McGhee*, 161 F. App'x 441, 444 (6th Cir. 2005); *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988). With the third suppression motion, Kellogg submitted an affidavit, *see* DE #107-2, but the District Court had already heard Defendant/Movant's testimony once at the second suppression hearing. Simply put, Nash performed in an objectively reasonable manner and could not have insisted on a right that does not exist.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. Defendant/Movant placed no evidence in the record to indicate that, if same had been presented at a third suppression hearing, the District Court would have ruled differently. While Kellogg continues to insist he should have prevailed on the suppression issues in his case, he has not alleged that, if Judge Hood only would have conducted a third suppression hearing, he would not have entered the conditional guilty plea and would instead have insisted on a trial.

### 14. Ground Fourteen – Failure to Ask to Continue the Third Suppression Matter

Next, Kellogg asserts that Nash performed ineffectively by failing to request a continuance of the third suppression matter. Essentially, Defendant/Movant continues to insist that White, if placed on the stand under oath, would offer supportive testimony.

Kellogg fails to prove deficient performance of counsel under *Strickland*. As a simple matter of procedure, defense counsel could have moved to reopen the hearing upon the discovery of any new significant evidence. *See, e.g.*, *United States v. Brown*, 449 F.3d 741, 750-51 (6th Cir. 2006); *United States v. Jenkins*, 728 F.2d 396, 398 (6th Cir. 1984); *United States v. Stokely*, No. 3:10-CR-24, 2010 WL 3087409, at *6 (E.D. Tenn. Aug. 5, 2010). As a factual matter, the Court considered statements by White, as reported by Detective Gutierrez, as accurate under

penalty of perjury. Given these statements, which continue to support earlier statements White made to law enforcement, Nash had no credible basis to assume that White would provide new information that supported Kellogg. Certainly, Defendant/Movant believed White would offer beneficial testimony, but in light of the posture of the case, with this motion as the third suppression motion, all the prior attempts to bring White in to testify, and White's repeated statements to law enforcement, Nash could not reasonably have sought a continuance. Counsel proceeded aggressively and appropriately in bringing the third suppression motion, but seeking a continuance to pursue testimony that had also been sought repeatedly by subpoena for previous hearings would not have been a constitutionally required strategy or approach. Under an objectively reasonable standard, Nash acted professionally and competently.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. As noted, defense counsel could have moved to reopen the hearing, had new evidence been discovered, so failing to move for a continuance would not, in its own right, prejudice Defendant/Movant in any way. With his section 2255 motion, Kellogg advances no statement from White (or any other witness) that would have been introduced, through testimony, at a third suppression hearing, if eventually held. Bald accusations cannot justify section 2255 relief, where a  movant bears a burden to prove contentions by a preponderance of the evidence, so this ground fails to yield any section 2255 relief for Kellogg. Defendant/Movant never establishes that, with a continuance, either the suppression result would have been different or he would not have entered into the conditional guilty plea and would thus have insisted on proceeding to trial.

15. Ground Fifteen – Failure to Request Leave to Reply to Government's Reply

As a fifteenth ground for relief, Kellogg argues that Nash provided ineffective assistance

of counsel by failing to request leave to reply to the Government's reply to the third suppression motion.[13] Of course, Defendant/Movant neglects to offer any information or discussion about what the additional briefing should have addressed.

Kellogg fails to prove deficient performance of counsel under *Strickland*. Here, the United States filed its response on May 18, 2005, *see* DE #109 (Response), and the District Court ruled on the motion on May 20, two days later. *See* DE #110 (Order). Ordinarily, under Local Criminal Rule 12.1, a party may file a reply within fourteen days of service of the response. *See* LCrR 12.1(d). Nash may or may not have been working on a reply to the Government's response, but Judge Hood ruled before he had an opportunity to submit any reply, determining apparently that the issues had been sufficiently addressed by the original motion and subsequent response. In this circumstance, no objectively unreasonable performance occurred because the District Court provided little time for reply and had not, as far as the record demonstrates, given advance notice that it would be ruling solely based on the motion and response. An objectively reasonable attorney, if seeking to reply, would have operated within the applicable rules, prepared a thoughtful and complete reply if warranted, and submitted that reply in a timely manner. Defendant/Movant has not proven that Nash proceeded otherwise or had any reason to prepare an expedited reply.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. Specifically, Defendant/Movant has not shown that, if a reply had been submitted, Judge Hood's decision would have been any different, nor has Kellogg established that, with a reply, he would

---

[13] Based on review of the record, the Court concludes that, by "Goverment's Reply," Kellogg means the Government's response. The Court proceeds with that understanding.

not have entered the conditional guilty plea and would have insisted on a trial.

16. Ground Sixteen – Failure to Interview or Depose Witnesses

Kellogg asserts that Nash performed ineffectively by failing "to ensure witnesses were interviewed or deposed establishing petitioner's overnight guest status at the White farm." *See* DE #146 at 15. Here, Defendant/Movant provides no statements from the prospective witnesses or any other evidence to document what these witnesses would purportedly have stated in their testimony.

Kellogg fails to prove deficient performance of counsel under *Strickland*. The record only documents that, in the approximately four months Nash served as counsel prior to Defendant/Movant's entry of a guilty plea, transcripts show no on-the-record discussion of any communication between Nash and any of the witnesses that Kellogg believes should have been interviewed or deposed. That is, the Court cannot ascertain whether such interviews occurred. Apparently, based on White's statements to Gutierrez, Nash had not been able to visit with White. *See* DE #109-2 at 4. Given Defendant/Movant's burden to prove his allegations by a preponderance of the evidence, he has not established deficient performance of counsel.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. *See Goldsby v. United States*, 152 F. App'x 431, 436 (6th Cir. 2005) (addressing the prejudice showing necessary for movants); *Mitchum v. United States*, 73 F. App'x 796, 798 (6th Cir. 2003) (same). Defendant/Movant has placed no evidence in the record indicating that White would have said anything different from what he indicated to Detective Gutierrez, nor has Kellogg proffered any other witness statement or materials. Simple hope that witnesses, if brought to testify and placed under oath, would offer supportive testimony cannot meet

Defendant/Movant's burden for section 2255 relief. Kellogg has not proven that the witnesses would provide any information to change the District Court's suppression analysis, nor has Defendant/Movant established that, if these witnesses had been interviewed, he would have refused to enter a conditional guilty plea.

### 17. Ground Seventeen – Failure to Enter Statements on the Record

In a related challenge, Kellogg argues that Nash provided ineffective assistance of counsel by not entering statements into the record to support Defendant/Movant's overnight guest status at the White farm. Of course, Kellogg fails to specify which statements should have been entered.

This ground for relief essentially repackages the prior ground – that Nash failed to gain and submit statements to prove overnight guest status. Rather obviously counsel could not enter potentially nonexistent statements into the record. Defendant/Movant here assumes that supportive statements could have been acquired and tendered, but given the absence of any such statements in the record, the Court has no basis for concluding the same. Accordingly, for the same reasons stated above, Kellogg merits no section 2255 relief on this ground. He has not established that, if statements had been entered on the record, the result would have been any different on the suppression matters, nor has Defendant/Movant proven that he would not have entered the conditional guilty plea and would have insisted on a trial.

### 18. Ground Eighteen – Failure to Advise Guilty Plea Would Preclude Additional Evidence

Next, Kellogg argues that Nash performed ineffectively by failing to advise that a guilty plea would preclude the acquisition and entry of additional evidence into the record regarding suppression matters. Apparently, Defendant contends that, if he had known that he could not

keep submitting evidence to the District Court after that court's judgment and sentence, he would not have pled guilty.

Kellogg fails to prove deficient performance of counsel under *Strickland*. First, the guilty plea may not have precluded additional evidence, had the Sixth Circuit reversed the District Court on the matters appealed. With that result, Defendant/Movant could have moved to withdraw his guilty plea and, with that motion granted, proceeded to trial. Notably, Kellogg has offered no proof to establish what Nash advised him during the plea negotiations, so the Court cannot make a finding in that regard. That is, Defendant/Movant failed even to submit an affidavit describing the advice he received from counsel. Given this dearth of evidence, the Court cannot find constitutionally deficient performance.

Even if Kellogg established deficient performance, he failed to prove any prejudice. As noted previously, Judge Hood explained how the conditional guilty plea would operate regarding Sixth Circuit review prior to Defendant/Movant's entry of the plea. *See* DE #131 at 7 ln. 25; *id.* at 8 lns. 1-6. At sentencing, Judge Hood described the conditional guilty plea process. *See* DE #137 at 16 lns. 9-17. This description indicated the Sixth Circuit would only be determining whether the District Court erred, and despite having an opportunity to raise questions, Kellogg simply indicated he understood. *See id.* at 17 lns. 5-6. Any erroneous advice – or failure to advise – by counsel would have been sufficiently corrected by Judge Hood's pre-plea description, and thus Kellogg cannot prove any prejudice. Defendant/Movant has not established that, if he had received different advice, he would have proceeded differently.

### 19. Ground Nineteen – Failure to Advise Guilty Plea Would Preclude Cross-Examination

As a nineteenth ground for relief, Kellogg asserts that Nash performed ineffectively by

failing to advise Defendant/Movant that a guilty plea would preclude cross-examination of White, whose hearsay statements had been introduced by the Government via brief in the third suppression matter. Under Defendant/Movant's theory, he would not have agreed to enter the conditional guilty plea, had he realized that he could not place a non-testifying witness on the stand and cross-examine that witness after the conclusion of his case.

Kellogg fails to prove deficient performance of counsel under *Strickland*. White never testified at a suppression hearing, so Defendant/Movant would not have had any opportunity to cross-examine him. The District Court considered statements by White, as reported under penalty of perjury by Detective Gutierrez, but hearsay statements have long been admissible in the suppression context. Earlier Kellogg argued that White would have offered supportive testimony, if only counsel had forced White to appear, but now, Defendant/Movant argues that cross-examining White would have made a difference. This contrasting argument illustrates the essential problem: Kellogg believes that White should have stood up and offered supportive testimony for a former friend, where White repeatedly and consistently offered instead a much different account of the circumstances to law enforcement officers. Defendant/Movant placed no evidence in the record concerning what advice he received from Nash regarding the plea agreement, so the Court cannot find deficient performance of counsel.

Even if Kellogg showed deficient performance, he fails to prove prejudice. Defendant/Movant had no constitutional right to confront or cross-examine White, who offered no direct testimony, in the suppression context. *See, e.g.*, *Matlock*, 94 S. Ct. at 993-94; *Davis*, 361 F. App'x at 636. As noted above, the District Court advised Defendant/Movant that, as a result of pleading guilty, he would be giving up his trial right to cross-examine witnesses. *See*

DE #131 at 11 lns. 1–13; *id.* at 12 lns. 11-15. After acknowledging that he would be giving up the right to cross-examine witnesses by pleading guilty, Kellogg chose to plead guilty. On that basis, he can show no prejudice here, even if his attorney provided deficient performance.

### 20. Ground Twenty – Failure to Raise Issues on Direct Appeal

Additionally, Kellogg argues that Nash provided ineffective assistance of counsel by failing to raise numerous issues on direct appeal, which would have avoided any subsequent procedural default as to those issues. Significantly, Defendant/Movant does not complain about any specific issue for direct appeal that he believes would have been successful. Instead, Kellogg argues that Nash performed ineffectively by failing to raise any issues that would now be procedurally defaulted. That is, Defendant/Movant's challenge relates to preservation of issues, not the merits of any particular issues.

Kellogg fails to prove deficient performance of counsel under *Strickland*. To begin, the ineffective assistance of counsel allegations (Grounds One through Twenty) would, as a general rule, properly be brought in a section 2255 motion, rather than direct appeal, so that the court would have a fully developed record to evaluate. *See United States v. Walden*, No. 08-5641, 2010 WL 4628122, at *5 (6th Cir. Nov. 17, 2010) (slip copy). As a result, none of Kellogg's ineffective assistance of counsel grounds for relief would suffer from procedural default now because of their absence on direct appeal. *See, e.g.*, *United States v. Cope*, No. 6:02-CR-56-DCR, 2010 WL 4629618, at *5 (E.D. Ky. Nov. 8, 2010) (demonstrating analysis, where movant alleged prosecutorial conduct claim should fall under ineffective assistance in order to avoid procedural default).

As to the remaining issues (Grounds Twenty One through Twenty Seven), Kellogg

likewise fails to show that Nash's appeal strategy constitutes deficient performance. A defendant has no constitutional right to demand that appellate counsel raise every possible issue on appeal. *See Jones v. Barnes*, 103 S. Ct. 3308, 3312-13 (1983). In fact, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 106 S. Ct. 2661, 2667 (1986) (quoting *Jones*, 103 S. Ct. at 3310).On direct appeal, an attorney must exercise reasonable professional judgment. *See Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*, 103 S. Ct. at 3313-14). Here, as noted by the Sixth Circuit, Defendant/Movant, by counsel Nash, raised direct-appeal issues regarding "the admissibility of evidence uncovered at [White's] farm, a statement he made after his arrest[,] and evidence seized from a storage locked in Lexington, Kentucky." *See* DE #140 at 1. Of Kellogg's Grounds Twenty One through Twenty Seven, the majority raise concerns about suppression issues. For example, Defendant/Movant continues to complain about not having the chance to cross-examine White or introduce purportedly exculpatory evidence from Ohio. Kellogg identifies no ground – not one example – that Nash should have raised on direct appeal to preserve any issue raised in this section 2255 motion and that would have had merit on such appeal. Significantly, Defendant/Movant also does not allege that he instructed Nash to appeal specific issues; instead Kellogg's complaint is that Nash failed to foresee what Defendant/Movant would, in the future, decide to raise under section 2255 and preemptively preserve all of those issues. An attorney, in the exercise of reasonable professional judgment, simply cannot be expected to be a psychic or fortune teller.

Even if Kellogg demonstrated deficient performance, he fails to establish prejudice. This

Court, in the exercise of its discretion, considers all issues raised by Defendant/Movant in his section 2255 motion. Accordingly, Nash's performance on direct appeal resulted in no procedural default here for Kellogg.

For the reasons discussed, none of Kellogg's ineffective assistance of counsel allegations merit section 2255 relief. Defendant/Movant had the burden to prove his allegations and simply failed repeatedly even to approach the necessary proof.

## B. Alleged District Court Errors – Grounds Twenty One to Twenty Seven

Kellogg also raises six complaints of constitutional error by the District Court in its consideration of the various suppression motions and the guilty plea. As with the ineffective assistance allegations, Defendant/Movant presents little evidence to support his contentions, and Grounds Twenty One through Twenty Seven likewise fail to yield section 2255 relief.

### 21. Ground Twenty One – Denial of Due Process Right to a Fair Trial

Kellogg asserts that the District Court denied him his due process right to a fair trial. However, as to that right in general, the record reflects instead that Defendant/Movant voluntarily gave up the right in order to enter a guilty plea. At the rearraignment, Kellogg responded, under oath, to Judge Hood in the following exchange involving the Judge, Nash, and Defendant/Movant:

> THE COURT: We had a trial scheduled in this matter some -- I think it was, when, Mr. Nash, I can't –
>
> MR. NASH: 17th of this month.
>
> THE COURT: 17th of this month, and we had to continue it because of the motion. You realize if you wanted to plead not guilty to these charges that you would have a right to trial.
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: And that would be a trial by jury, you are aware of that.

THE DEFENDANT: Yes, Your Honor.

*See* DE #131 at 10 lns. 20-25; *id.* at 11 lns. 1-6. The exchange continued:

THE COURT: You would have the right, too, to have the government prove each and every one of these charges against you beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, if I accept your plea in here, except for the provisions that make it conditional, you won't have a trial in this matter. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you will have waived or given up your right to trial. as well as those rights associated with the trial that I have just described, do you understand that?

THE DEFENDANT: Yes, Your Honor.

*See id.* at 12 lns. 2-15. Kellogg proceeded to plead guilty to the various counts in his plea agreement. *See id.* at 16-34. Accordingly, Defendant/Movant establishes no general denial of the right at all, much less a substantial and injurious effect on the proceedings.

To the extent Kellogg complains about a trial right purportedly founded on the conditional portion of the plea agreement, no such right exists. As Judge Hood explained at rearraignment, the plea agreement would only be set aside if the Sixth Circuit reversed the District Court on the issues preserved for conditional review. *See id.* at 7 ln. 25; *id.* at 8 lns. 1-6. Defendant/Movant affirmed his understanding of the conditional mechanics at issue. *See id.* at 8 ln. 6. Had the Sixth Circuit reversed the District Court, then Kellogg would again have had the trial right that he conditionally ceded as part of the plea agreement. Here, however, the appellate court upheld Judge Hood's pretrial rulings. Accordingly, and per agreement of the United States

and Defendant/Movant, the District Could never set aside the plea agreement. This ground

merits no section 2255 relief and should be denied by the District Court.

### 22. Ground Twenty Two – Denial of Fair Opportunity to Raise Issues

Next, Kellogg argues that the District Court denied him a fair and constitutional

opportunity to raise issues. Defendant/Movant fails to specify which issues the District Court

denied him the opportunity to raise, so even if that complaint would be a cognizable ground for

section 2255 relief, no such relief should be afforded. Notably, Kellogg had two evidentiary

hearings, where he indisputably had a full and fair opportunity to put forth any arguments and

evidence supporting suppression. Judge Hood permitted three separate suppression motions,

despite the timing of at least one of those motions (the second) being in obvious violation of the

governing Discovery Order in the case.[14] *See* DE #9 (Discovery Order) at 4 ("Within ten (10)

---

[14] Just last month, the Sixth Circuit reviewed the importance of pretrial motions deadlines:

> Under the Federal Rules of Criminal Procedure, motions to suppress evidence must be raised by pretrial motion before the deadline set by the district court. Fed R. Crim. P. 12(b)(3)(C), (c). If a party fails to raise a defense or objection that must be made by pretrial motion before the deadline, that defense or objection is waived. Fed R. Crim. P. 12(e); *see United States v. Kincaide*, 145 F.3d 771, 778 (6th Cir. 1998). The potential harshness of a strict application of this rule is mitigated by a safety valve that allows district courts to grant relief from the waiver for "good cause." Fed. R. Crim. P. 12(e).

> This Court reviews a district court's denial of a motion to file an untimely pretrial motion to suppress for abuse of discretion. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010). The Supreme Court has recognized that district courts require a great deal of latitude in scheduling trials and, therefore, must be given broad discretion to determine whether to grant continuances. *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Denying even a justified request for a continuance is only a constitutional violation if the denial is based on the district court's unreasoned and arbitrary need for expediency. *See United States v. Crossley*, 224 F.3d 847, 854-55 (6th Cir. 2000). As a result of the district court's discretion, we are

days of the date of receipt of the intended discovery under Rule 16(a), the defendant shall file all

pretrial motions."). Kellogg's third suppression motion offered only an affidavit and some

attachments as the new evidence to be considered, and Judge Hood considered that affidavit and

those attachments in full in reaching his decision. Defendant/Movant merits no section 2255

relief on this ground. He has not established any substantial and injurious effect or influence on

the proceedings.

<u>23. Ground Twenty Three – Denial of Fair Opportunity to Confront Witnesses</u>

As a twenty third ground for relief, Kellogg asserts that the District Court denied him a

fair and constitutional opportunity to confront witnesses. However, this ground also fails to merit

section 2255 relief.

While Defendant/Movant asserts repeatedly that White would tell a different story if

placed under oath and subjected to cross-examination, Kellogg had no constitutional right to

confront or cross-examine White, who offered no direct testimony, in the suppression context.

*See, e.g.*, *United States v. Matlock*, 94 S. Ct. 988, 994 (1974); *United States v. Davis*, 361 F.

App'x 632, 636 (6th Cir. 2010) (collecting cases regarding the Confrontation Clause in a

suppression hearing context, where a defendant challenged a trial court's limits on cross-

examination of a testifying witness). Hearsay testimony has long been permitted in suppression

---

generally precluded from reaching the merits of challenges to a district court's
ruling on the timeliness of pretrial motions. "Only in a case of the most flagrant
abuse will a court of appeals review a trial court's discretionary denial of a
motion to suppress as untimely." *United States v. Francis*, 646 F.2d 251 260 (6th
Cir. 1981).

*United States v. Walden*, No. 08-5641, 2010 WL 4628122, at *2 (6th Cir. Nov. 17, 2010) (slip
copy).

hearings. *See, e.g.*, *United States v. Raddatz*, 100 S. Ct. 2406, 2414 (1980); *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir. 1979). In this instance, White offered statements to a law enforcement officer, Detective Gutierrez, where lying to such officer would make an individual subject to criminal charges. *See, e.g.*, 18 U.S.C. § 1001; Ky. Rev. Stat. Ann. § 519.040. Moreover, Detective Gutierrez swore, under penalty of perjury, to the accuracy of the transcript she provided. *See* DE #109-2 at 1-2. This sort of hearsay testimony, offered to a law enforcement officer and reported under penalty of perjury, has substantial facial reliability. For these reasons, Defendant/Movant's ground for relief yields no section 2255 relief. He has not established any substantial and injurious effect or influence on the proceedings.

### 24. Ground Twenty Four – Denial of Fair Opportunity to Present Evidence

Additionally, Kellogg argues that the District Court denied him a fair and constitutional opportunity to present evidence. Absent any further information from Defendant/Movant, the Court cannot determine, for certain, which evidence he alleges he could not present.

To the extent Kellogg intends this ground simply to be a rephrasing of the confrontation and cross-examination challenge – where the evidence to be presented would be a cross-examination of White – the Court has already addressed the arguments. On the other hand, to the extent Kellogg focuses on the allegedly exculpatory evidence from Ohio, he has placed none of that evidence in the record, so cannot come near the preponderance of the evidence standard to show entitlement to relief. Moreover, Kellogg pled guilty, so if he believes the Ohio evidence should have been introduced at trial, he certainly can place blame on no one but himself. The Court can discern no other evidence to which Kellogg might be referring and definitely no other evidence tendered into the record in support of this argument. The ground should merit no relief

for Kellogg, who has not established any substantial and injurious effect or influence on the proceedings.

### 25. Ground Twenty Five – Denial of Fair Opportunity to Be Secure in Own Effects

Kellogg argues that the District Court denied him a fair and constitutional opportunity to be secure in his own effects. The Court understands this ground for relief simply to be a complaint that Judge Hood decided the suppression matters incorrectly – that is, by deciding the suppression matters against Defendant/Movant, the District Court somehow denied Kellogg Fourth Amendment rights. Of course, this argument has no merit because no individual has a right for courts to agree with his arguments for suppression of evidence.

Challenges to the District Court's rulings on suppression matters have already been denied on appeal to the Sixth Circuit. *See United States v. Kellogg*, 202 F. App'x 96, 101-04 (6th Cir. 2006). A section 2255 motion "may not be utilized to relitigate an issue . . . raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see Clemmons v. United States*, 142 F.3d 432, at *3 (6th Cir. 1998) (table) (addressing rule in a suppression context) (citing *Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974) (per curiam)). Here, Kellogg has provided essentially no information to support his ground for relief, so the Court cannot determine if, in any way, the instant claim differs from those brought on direct appeal. From the record, reviewing both the Sixth Circuit opinion and the instant section 2255 motion, the claims appear substantially identical. In both, Defendant/Movant claims the District Court erred in denying suppression motions concerning the farm in Woodford County. Kellogg further shows not even the hint of any exceptional circumstances that would permit relitigation. Accordingly, no section 2255 relief should be

afforded on this ground. Kellogg has not proven or otherwise established any substantial and injurious effect or influence on the proceedings.

### 26. Ground Twenty Six – Undue Weight to the Statement of White

Next, Kellogg alleges, as a non-constitutional error, that the District Court erred by giving undue weight to the hearsay statements of White as reported by Detective Gutierrez. This ground for relief also effectively seeks to relitigate a matter already fully and substantially addressed on direct appeal. *See DuPont*, 76 F.3d at 110. In fact, the weight appropriately afforded to White's statement served as one of the principal disagreements between the majority and the dissent on the Sixth Circuit panel. While Judge Griffin, in dissent, characterized Detective Gutierrez's declaration to be "unsworn" and would afford that declaration little weight as to White's statements, the majority held differently, observing that

> [W]hile White's statements were hearsay, there was no reason not to rely upon them: They were consistent with what White had told police officers at the time of the search; Officer Gutierrez declared under penalty of perjury that the transcript was accurate; and there is no reason to think that White, who had consented to the search in the first instance, suddenly had a reason to dissemble to the police.

*See Kellogg*, 202 F. App'x at 102. No exceptional circumstances have been raised – or, at any rate, established in any way – so the Court should not permit relitigation. This ground should afford no relief.  Here, Kellogg has not established a fundamental defect resulting in a miscarriage of justice or other egregious error in violation of due process.

### 27. Ground Twenty Seven – Contradictory Factual Findings

Finally, Kellogg asserts, as a non-constitutional error, that the District Court erred in making contradictory factual findings as to the first and second suppression matters. Of course, consistent with Defendant/Movant's other arguments, he provides few specifics, this time

apparently intending for the Court to speculate what the contradictory factual findings might be. As a practical matter, the Court notes that, since the first and second suppression motions made different arguments, the District Court may well have focused on different facts and reached conclusions, in those specific contexts, that would appear inconsistent when wrenched out of context.

This ground for relief, at least facially, also seeks to relitigate a matter already fully and substantially addressed on direct appeal. *See DuPont*, 76 F.3d at 110. The Sixth Circuit took up Defendant/Movant's challenges to the District Court's suppression holdings and affirmed the District Court. Here, Kellogg has presented no hint of exceptional circumstances meriting a relitigation of the suppression matters. No section 2255 relief should be afforded here, as again Kellogg has not shown any fundamental defect that inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process.

## IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a

Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

The Court recommends, for the reasons stated below, that no Certificate of Appealability issue for any of the grounds in Kellogg's section 2255 motion. As to each ground, no reasonable jurists would find the Court's assessment to be debatable or wrong.

With Ground One, Kellogg provided no statements or other information from any of the witnesses he alleges should have been introduced, so the Court's assessment cannot be debatable or wrong.

As to Ground Two, Defendant/Movant indisputably failed to show that a continuance would have made any difference in the result either at the suppression hearing or with the eventual entry of a guilty plea. Milner pursued objectively reasonable strategy.

For Ground Three, Kellogg failed to show that enforcing the subpoena would have made any difference in the suppression result or that he would not otherwise have entered the conditional guilty plea. Milner successfully sought a trial subpoena for White.

Regarding Ground Four, the record reflects, in a manner that cannot reasonably be disputed, that Kellogg had every opportunity to provide testimony establishing his status on the White farm. Milner pursued general questioning because Defendant/Movant elaborated extensively with his answers.

As to Ground Five, Milner represented Kellogg in an objectively reasonable manner by contesting the United States's motion for detention. Defendant/Movant cannot seriously contend

that counsel should have argued against the motions for arraignment.

With Ground Six, Milner pursued and acquired the exact evidence that Kellogg contends had not been sought. The record proves Defendant/Movant's contentions to be completely erroneous.

Regarding Ground Seven, Kellogg established no prejudice at all because Milner successfully arranged for some of the evidence to be available at trial and replacement counsel later had knowledge of the evidence at issue.

As to Ground Eight, no evidence in the record establishes any discussions between Kellogg and Milner concerning a guilty plea, so the Court cannot conclude ineffective assistance of counsel has occurred, where Defendant/Movant bears the burden of providing same.

Ground Nine fails in the same indisputable way because no account of any discussions between Kellogg and Milner about plea negotiations exists in the record. The Court could not possibly find ineffective assistance on an empty record.

For Ground Ten, Kellogg has not identified any ineffective assistance rulings that would even be possible at the trial level or established that such a direct-appeal argument should be pursued, given the prospective remand for further proceedings envisioned by the conditional guilty plea.

For Ground Eleven, the record reflects, in a manner no reasonable jurist would debate, that Nash had knowledge of the alleged exculpatory evidence that Kellogg contends the review of the record would have provided.

As to Ground Twelve, Nash had arranged to travel to Ohio to review the evidence identified by Kellogg, and that opportunity closed because Defendant/Movant chose to plead

guilty.

With Ground Thirteen, Kellogg had no right to a third suppression hearing, and thus Nash had no basis to insist on same. An objectively reasonable attorney would not insist on enforcing a non-existent right.

Regarding Ground Fourteen, Defendant/Movant failed to demonstrate how a continuance would have changed the result in any way. That is, Kellogg shows no evidence that a continuance would have been permitted by Judge Hood.

For Ground Fifteen, the District Court ruled on the third suppression motion two days after the Government responded, so Nash had no typical opportunity to file a reply for Kellogg. Counsel may well have been working on a reply to be submitted within the time allotted by the local rules, but the Court's ruling prevented any such submission.

As to Ground Sixteen, Defendant/Movant failed to establish what, if anything, the witnesses would have stated. He certainly failed to establish that the result would have been different in any way.

With Ground Seventeen, the record shows no statements, so Nash certainly could not have entered non-existent statements into the record. Kellogg offers no evidence about his discussions with Nash concerning entry of any statements.

Regarding Ground Eighteen, Defendant/Movant places no evidence in the record regarding his discussions with counsel about a plea. Given this dearth of evidence, the Court cannot conclude that any ineffective assistance occurred.

For Ground Nineteen, the same rationale applies in that Kellogg placed no evidence in the record to establish what occurred in discussions of the guilty plea with Nash. Absent any

evidence, the Court cannot find that Defendant/Movant met his burden of proof.

As to Ground Twenty, Nash properly focused on issues related to the suppression matters, per the conditional guilty plea. Moreover, no issues ended up procedurally defaulted, so Kellogg suffered no prejudice.

With Ground Twenty One, Defendant/Movant entered a knowing, voluntary, and intelligent guilty plea after being advised that no trial would occur. Kellogg denied himself the trial right by choice and under oath.

Regarding Ground Twenty Two, the District Court permitted three separate suppression motions, including at least one by grace relative to the operative scheduling order in the case. Kellogg cannot establish that he lacked opportunities to present arguments.

As to Ground Twenty Three, Defendant/Movant knowingly, voluntarily, and intelligently forfeited his right to confront and cross-examine witnesses, when he entered the guilty plea. Judge Hood ensured that Kellogg understood the implications.

For Ground Twenty Four, again Defendant/Movant had three separate suppression motions, all permitted by the District Court. Kellogg makes no showing of what additional evidence he would have presented.

On Ground Twenty Five, Defendant/Movant essentially claims that the District Court erred in its suppression determinations, and the Sixth Circuit thoroughly addressed this contention. Even so, Kellogg has not shown why a different result would now occur.

Regarding Ground Twenty Six, Defendant/Movant attempts to relitigate an issue decided specifically by the Sixth Circuit: the weight of White's hearsay statements. Kellogg has provided no basis for reopening the issue and continues to argue that the statements should have been

ignored, despite their indicia of reliability.

Finally, as to Ground Twenty Seven, Defendant/Movant failed to identify any contradictory findings, so the Court cannot ascertain exactly what the complaints might be. Even so, the District Court considered different suppression motions regarding the same evidence, so under the different theories, Judge Hood may well have utilized different terminology. Such different language does not establish section 2255 relief.

## V. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Movant's motion for section 2255 relief as to all grounds. Because the filings and records establish conclusively that Kellogg should receive no section 2255 relief, the Court need not conduct an evidentiary hearing. The Court also recommends that the District Court **DENY** a Certificate of Appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of December, 2010.



Signed By:
*Robert E. Wier*

United States Magistrate Judge